UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TERRELL ROCHE,

               Plaintiff,

v.

UNKNOWN WAY et al.,

               Defendants.

_____/

Case No. 1:25-cv-1582

Honorable Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF staff: Correctional Officer Unknown Way, Correctional Officer Unknown Gage, Inspector Unknown Salinas, Inspector Unknown Jaramillo, and Administrative Law Judge Unknown Yarmalenka. (Compl., ECF No. 1, PageID.1, 2.)

On March 20, 2025, Plaintiff filed a complaint against Defendant Salinas and another individual in the United States District Court for the Western District of Michigan, alleging that Defendant Salinas planted drugs in Plaintiff's cell and falsified a drug test. (*Id*., PageID.3); Compl., *Roche v. Morrison*, No. 1:25-cv-312 (W.D. Mich. Mar. 20, 2025), (ECF No. 1, PageID.3). Four months later, on July 12, 2025, Plaintiff was removed from his cell by unnamed correctional officers and taken to segregation as part of a "pending investigation."[1] (Compl., ECF No. 1, PageID.3.) Plaintiff was then issued a misconduct ticket as "a form of retaliation at the direction of [Defendant] Jaramillo" because of Plaintiff's pending lawsuit against Defendant Salinas. (*Id*). The misconduct ticket was issued after Defendants Way and Gage said they found documents explaining how to smuggle drugs into the prison in Plaintiff's property. (*Id*.) According to Plaintiff, he did not have any such documents in his property. (*Id*.)

On July 13, 2025, Plaintiff underwent a "misconduct review" before Defendant Yarmalenka. (*Id*.) At the review, Defendant Yarmalenka acknowledged that the handwriting on the documents Defendants Way and Gage found did not match a sample of Plaintiff's handwriting. (*Id*.) After the review, Plaintiff's misconduct ticket was upheld.[2] (*Id*.) As a result, Plaintiff was sent to a more restrictive prison. (*Id*.)

---

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

[2] In Plaintiff's complaint, he refers to multiple "misconducts" and "tickets." (Compl., ECF No. 1, PageID.3.) But Plaintiff only provides factual allegations regarding the misconduct ticket involving the documents found by Defendants Way and Gage. (*Id*.) Therefore, to the extent that

On July 14, 2025, unidentified non-party individuals "acting on behalf of Defendant Salinas" told Plaintiff that he "should've knew [sic] this was coming" and that he should "drop the lawsuit or we'll keep setting you up with misconducts [and] keep putting you in the hole." (*Id.*)

Plaintiff seeks unspecified monetary damages. Plaintiff also seeks an order (i) requiring an investigation of Plaintiff's allegations to be conducted, (ii) directing Defendants to issue Plaintiff a written and verbal apology, and (iii) removing the smuggling misconduct from Plaintiff's record.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

---

Plaintiff received any other misconduct tickets, the Court will not consider those tickets in its analysis of Plaintiff's claims.

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Salinas

Plaintiff alleges that the other named Defendants' conduct was motivated by the lawsuit Plaintiff filed against Defendant Salinas, but Plaintiff's complaint does not attribute any specific conduct to Defendant Salinas. (*See generally* Compl., ECF No. 1.) Plaintiff only references Defendant Salinas when discussing the pending lawsuit and when alleging that unidentified individuals "acting on behalf of Defendant Salinas" told Plaintiff that he needed to drop the lawsuit or he would continue to receive misconduct tickets and be placed in segregation. (*Id*., PageID.3.) These allegations fail to show how Defendant Salinas was personally involved in the violation of Plaintiff's constitutional rights.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr.*

4

*Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Further, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *See Iqbal*, 556 U.S. at 676. Here, Plaintiff refers to Defendant Salinas in the body of his complaint when discussing Plaintiff's past lawsuit against Defendant Salinas, but in the present action, Plaintiff fails to allege that Defendant Salinas engaged in any active unconstitutional conduct. (*See generally* Compl., ECF No. 1.)

Moreover, to the extent that Plaintiff seeks to hold Defendant Salinas liable due to his supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum,"

the plaintiff must show that the defendant "at least implicitly authorized, approved,
or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995

F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendant Salinas encouraged or

condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in

their conduct.

Accordingly, for these reasons, all of Plaintiff's claims against Defendant Salinas will be

dismissed for failure to state a claim.

### B.    First Amendment Retaliation Claims

Plaintiff alleges that the misconduct ticket he received was retaliation for the lawsuit that

Plaintiff filed against Defendant Salinas. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that

he was subsequently transferred to a "more restricted prison." (*Id.*) The Court will construe these

allegations as raising First Amendment retaliation claims against Defendants Gage, Way,

Jaramillo, and Yarmalenka.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the

Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the

plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be

able to show that the exercise of the protected right was a substantial or motivating factor in the

6

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, the filing of a civil rights lawsuit constitutes protected conduct. *See, e.g.*, *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Here, Plaintiff filed a lawsuit against Defendant Salinas in the United States District Court for the Western District of Michigan. (Compl., ECF No. 1, PageID.3.) At this stage of the proceedings, the Court assumes that Plaintiff engaged in protected conduct for purposes of his First Amendment claim.

### 2.    Adverse Action

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

### a.    Misconduct Ticket

Here, Plaintiff alleges that he was issued a misconduct ticket on July 13, 2025, for attempting to smuggle drugs into the facility. (Compl., ECF No. 1, PageID.3.) The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"). Therefore, Plaintiff has alleged sufficient facts to satisfy the second element of a retaliation claim.

### b.     Transfer to "More Restricted Prison"

Ordinarily, transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the Sixth Circuit held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. The *Hill* court determined that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts.

Here, Plaintiff alleges that he was transferred to a "more restricted prison," however, Plaintiff fails to allege any facts about how the prison was "more restricted." (Compl., ECF No. 1, PageID.3.) Under these circumstances, Plaintiff's conclusory allegation that he was transferred to a "more restricted prison" is insufficient to show that the conditions at the new prison were akin to the segregation-like conditions addressed in *Hill*, 630 F.3d at 474–75. Therefore, Plaintiff fails to show that his transfer to a "more restricted prison" constituted adverse action.

### 3.     Retaliatory Motive

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. The Court addresses this third element below.

### a.     Defendants Way and Gage

Plaintiff alleges that Defendants Way and Gage took adverse action against Plaintiff by issuing Plaintiff a misconduct ticket based on fabricated evidence at the direction of Defendant Jaramillo. (Compl., ECF No. 1, PageID.3.) Plaintiff further alleges that he was told by unidentified

individuals that Plaintiff "should've knew [sic] this was coming, drop the lawsuit or we'll keep setting you up with misconducts and keep putting you in the hole." (*Id.*)

However, Plaintiff has failed to show that the actions of Defendants Way and Gage with regard to the issuance of the misconduct ticket were motivated by Plaintiff's lawsuit against Defendant Salinas. Plaintiff alleges no facts regarding Defendants Way and Gage that could show that the issuance of this misconduct ticket was motivated by Plaintiff's lawsuit against Defendant Salinas. (*See* Compl., ECF No. 1, PageID.3.) In fact, there is no indication in the complaint that Defendants Way and Gage were even aware of the lawsuit. Instead, after Defendants Way and Gage issued Plaintiff the misconduct ticket, Plaintiff alleges that unidentified individuals "acting on behalf of Defendant Salinas" told Plaintiff that he would continue to receive misconduct tickets if Plaintiff did not drop the lawsuit. (*Id.*) This is insufficient to show that the action of Defendants Way and Gage were motivated by that lawsuit.

Accordingly, the Court will dismiss any intended First Amendment retaliation claims against Defendants Way and Gage.

### b.    Defendant Jaramillo

Plaintiff alleges that the misconduct ticket "was written [as] a form of retaliation at the direction of [Defendant] Jaramillo" because of Plaintiff's pending lawsuit against Defendant Salinas. (*Id.*)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Here, Plaintiff merely alleges the ultimate fact that Defendant Jaramillo acted with a retaliatory motive, claiming that Jaramillo directed the issuance of the misconduct ticket because of Plaintiff's lawsuit; however, Plaintiff presents no

facts to support this assertion. (Compl., ECF No. 1, PageID.3.) Specifically, as an initial matter, besides alleging in a conclusory manner that the misconduct ticket was issued at the direction of Defendant Jaramillo, Plaintiff does not present any facts to support his conclusory assertion. For example, Plaintiff's complaint does not indicate how and when Defendant Jaramillo directed the issuance of this misconduct ticket. Indeed, Plaintiff alleges no *facts* to suggest that Defendant Jaramillo had any interaction with Defendant Way and Gage, the officers who issued the misconduct ticket, let alone that Jaramillo directed them to issue the misconduct ticket to Plaintiff. Moreover, even setting this issue aside, Plaintiff does not present any *facts* to support his conclusory assertion that Defendant Jaramillo's act of directing others to issue Plaintiff a misconduct ticket was motivated by Plaintiff's lawsuit against Defendant Salinas. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). In short, Plaintiff's conclusory allegations are insufficient to show that Defendant Jaramillo's actions were motivated by Plaintiff's lawsuit.

Accordingly, this speculative allegation fails to state a claim. The Court will dismiss any intended First Amendment retaliation claim against Defendant Jaramillo for failure to state a claim.

### c.       Defendant Yarmalenka

Plaintiff alleges that during the misconduct review hearing, Defendant Yarmalenka acknowledged that the handwriting on the found document did not match a sample of Plaintiff's handwriting. (Compl., ECF No. 1, PageID.3.) Plaintiff further alleges that Defendant Yarmalenka "allow[ed] and encourage[ed] the continuation and the corruption" of the other Defendants. (*Id.*)

10

Any intended retaliation claim against Defendant Yarmalenka is entirely conclusory. Plaintiff alleges no facts to suggest that Defendant Yarmalenka's ruling following the misconduct review hearing was influenced by Plaintiff's lawsuit, or that Defendant Yarmalenka was even aware of that lawsuit. *See Lewis*, 20 F. App'x at 459 ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El*, 523 U.S. 574, 588 (1998))). Under these circumstances, Plaintiff fails to state a First Amendment retaliation claim against Defendant Yarmalenka.

Accordingly, the Court will dismiss any intended First Amendment retaliation claim against Defendant Yarmalenka.

### C.      Fourteenth Amendment Due Process Claims

In addition to Plaintiff's First Amendment retaliation claims, the Court will construe Plaintiff's allegation that Defendant Yarmalenka violated Plaintiff's rights by "denying [Plaintiff] freedom and causing [Plaintiff] to be sent to a more restricted prison" as raising a claim of a violation of Plaintiff's Fourteenth Amendment right to procedural due process. (Compl., ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff alleges that he received a misconduct ticket for possessing a document containing instructions on how to smuggle drugs into the prison. (Compl., ECF No. 1, PageID.3.) Plaintiff further alleges that Defendant Yarmalenka presided over the misconduct review hearing, and, despite acknowledging that the handwriting on that document at issue did not match a sample of Plaintiff's handwriting, Defendant Yarmalenka found Plaintiff guilty of that misconduct charge. (*Id.*)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions

12

available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).[3]

Further, with respect to Plaintiff's transfer to a "more restricted prison" (Compl., ECF No. 1, PageID.3), "prisoners generally do not have a state-created liberty interest in avoiding a transfer from one prison to another, even if the second prison has worse conditions." *McClendon*

---

[3] If Plaintiff had been found not guilty of any of the misconduct charges, then he would not have received any sanctions for a misconduct conviction. Under these circumstances, Plaintiff would necessarily fail to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

*El v. Washington*, 144 F.4th 900, 905 (6th Cir. 2025) (citations omitted). And, because Plaintiff fails to allege any facts about how the prison was "more restricted," he necessarily fails to show that his confinement there constituted an "atypical and significant hardship," as contemplated by *Sandin*.

Accordingly, for the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendant Yarmalenka. The Court will dismiss any intended Fourteenth Amendment due process claim against Defendant Yarmalenka.

### **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: June 18, 2026                          /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              CHIEF UNITED STATES DISTRICT JUDGE

14